IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| THOMAS JEFFERY STONE, #671904 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv217 |
| DENNIS K. BLEVINS, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Thomas Jeffery Stone, a prisoner confined at the Powledge Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The complaint was filed on May 30, 2008. On July 21, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Coordinator Chip Satterwhite, Warden Eddie Baker and Nurse Barbara Hughes were present during the hearing in the event the Court wanted testimony about information contained in the Plaintiff's records or practices in the prison system.

The Plaintiff testified that he was in his cubicle at the Powledge Unit on July 9, 2006. Officer Haak came to his cubicle and told him to go to the back dayroom while he conducted a search. The Plaintiff obtained permission to go to the restroom on his way to the dayroom. Officer Taylor walked by while he was in the restroom. He asked the Plaintiff why he was there, and the Plaintiff explained that Officer Haak had given him permission to go to the restroom on the way to the back dayroom. Officer Taylor said, "OK."

The Plaintiff observed movement among the officers while he was waiting in the dayroom. Officer Taylor eventually motioned to him to come back. They walked to the Plaintiff's cubicle, and he noticed that all of his property was in disarray. He asked Officer Haak why he had destroyed his property. Officer Taylor told him to go out into the hallway. Taylor then told him, "This isn't personal, only business." Taylor pushed the Plaintiff with his left arm and grabbed him in a choke hold with his right arm. He placed his body weight on the Plaintiff, causing him to fall to the cement floor. The Plaintiff's face around his right eye struck the floor first. Haak kicked the Plaintiff in the side and then went down on his knees on one side of the Plaintiff's back. Taylor had his knees on the other side of the Plaintiff's back, and he placed handcuffs on the Plaintiff. The Plaintiff stressed that he did not do anything to prompt the use of force.

The Plaintiff was taken to the infirmary. Lt. Johnson gave him a form to fill out. She erroneously gave him a disciplinary report form, as opposed to an inmate participation statement. Officer Hutchison subsequently gave him the correct form. The Plaintiff filled out the form and gave it to an officer, but he added that it was never turned in for use in the investigation.

The Plaintiff received two disciplinary cases. One was for failure to obey an order and the other was for creating a disturbance. He was placed in prehearing detention while awaiting the

disciplinary hearing. The Plaintiff was found guilty on July 17, 2006. His punishment included 15 days in solitary confinement, with credit for time spent in prehearing detention. He remained in solitary confinement from July 17, 2006 through July 25, 2006. It is noted that the disciplinary proceedings were the subject of a petition for a writ of habeas corpus, Civil Action Number 6:06cv456, which was dismissed on December 15, 2006.

The Plaintiff complained about the conditions in solitary confinement. He stated that the temperatures ranged from 107 to 110 degrees. There was no air movement in solitary confinement. There was no ventilation or exhaust vents. The only openings were two passageways into solitary confinement. There appeared to be vents, but they were covered. The inmates confined there were not able to use fans. The Plaintiff stated that the conditions were hot and suffocating and that the conditions had a negative impact on his health.

The Plaintiff told the nurses that he was experiencing headaches, and he was provided Ibuprofen. On July 19, 2006, he sent a truck mail envelope to P. A. David Fortner complaining that it was too hot and that the heat was having a negative impact on his serious heart condition. The response stated, "You are lower bunk, lower row not medically indicated." He complained to Nurse Maxwell about the heat and its effect on his heart, but Maxwell did noting to help him. All the while, his right eye began swelling. He observed his field of vision in his right eye becoming smaller and smaller, and the edges had a foggy appearance. He submitted sick calls about his eye problem. On August 4, 2006, Nurse Clark had him look at an eye chart. The Plaintiff could not see anything out of his right eye, and his vision in his left eye was blurry. He asked Nurse Clark to let him see P. A. Fortner, but she told him that nothing was wrong with him.

The Plaintiff finally saw P. A. Fortner after his release from solitary confinement on September 22, 2006. Fortner told him that he should have seen him earlier. Fortner had him sent to John Sealy Hospital in Galveston on that day. He was admitted for the Retina Specialist Clinic on September 27, 2006. He was told that there was too much blood and swelling in his right eye. He was further told that the injury was caused by the blow to his right eye during the use of force incident. On October 4, 2006, Dr. Balanes told him, "I'm not God and I can not work miracles, but the damage has been done to your right eye, there is too much blood and swelling." Dr. Balanes wanted to try injecting kenalog in the right eye and then laser the vein injury shut. The Plaintiff asked if the procedure could be postponed in order for him to take care of other matters. Dr. Balanes was agreeable to the postponement, and he had it scheduled for December 6, 2006. The procedure, however, was never performed. The Plaintiff had follow-up exams, but he never had the kenalog injection nor the laser treatment. The Plaintiff testified that he refused the last follow-up exam.

The Plaintiff was returned to the Powledge Unit with a prescription for sunglasses. Unit Health Admistrator Jeanie Allison told him he would have to buy the sunglasses at the commissary. He noted that he was able to obtain special sunglasses from the Metal Fabrication Plant. His current pair of sunglasses was provided by his family. He noted that he experiences pain and headaches when he is not wearing sunglasses.

The Plaintiff was asked why he sued the various Defendants. He testified he sued Warden Blevins because he was aware of the conditions in solitary confinement. Blevins also had the vents covered while the paint squad was working, but he did not have any personal involvement in the Plaintiff's claims. He sued Warden Sizemore, the current warden, in order to obtain injunctive relief.

The Plaintiff sued Officers Taylor and Haak for excessive use of force.

Lt. Johnson and Officer Hutchison were sued regarding their roles in the investigation following the use of force incident. He alleged that they did not conduct the investigation properly.

Karen Sexton, the CEO of Correctional Medical Care for UTMB, was sued because she has allowed the improper policies and procedures to persist. She is in control of the policies and procedures.

Nurse Kelly Maxwell was sued because he received the Plaintiff's medical requests. He was told about the Plaintiff's problems in solitary confinement, and he responded that the problems were not medically indicated. P. A. Fortner was sued because the nurses reported to him. Fortner permitted the deliberate indifference to the Plaintiff's medical situation to persist while the Plaintiff was in solitary confinement. Medical care was delayed due to this attitude. Fortner realized that he should have seen the Plaintiff earlier when he finally saw him on September 22, 2006. He had medical care provided at that time. Nurses McDaniel and Clark were the ones who specifically denied the Plaintiff access to medical care, and to Fortner, while he was confined in solitary confinement.

Nurse Hughes testified from the Plaintiff's medical records. She confirmed that the Plaintiff was not examined by P. A. Fortner until September 22, 2006. Fortner issued instructions for emergency medical care at that time. The usage of kenalog and laser therapy was discussed, but the records indicate that the Plaintiff did not want the procedures performed at that time. The Plaintiff had a follow-up examination in December, 2006. He was provided eye drops only. Another follow-up exam occurred in March, 2007, and sunglasses and eye drops were prescribed. The Plaintiff still had edema to the eye when examined in June, 2007. The prospect of using kenalog was discussed again, but the Plaintiff declined the option. He signed a waiver. He received a permanent sunglasses pass. Nurse Hughes testified that the source of the Plaintiff's problems was swelling and blood on the retina,

which was characterized as macular edema. She also thought the delay in receiving medical care from August to September 22, 2006, was too long.

## Discussion and Analysis

As an initial matter, the Court notes that the Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). The Plaintiff's complaints about violations of prison regulations, without more, do not state a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).

The first constitutional violation alleged by the Plaintiff involved excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted).  The absence of a serious injury is relevant to but not dispositive of the excessive force claim.  *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered;  2. the need for the application of force;  3. the relationship between the need and the amount of force used;  4. the threat reasonably perceived by the responsible officials; and  5. any efforts made to temper the severity of a forceful response."  *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992).  *See also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).  On the other hand, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury.  *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).  There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993).  Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

7

In the present case, the Plaintiff has alleged facts showing that Officers Taylor and Haak unnecessarily used force against him. They should respond to the excessive use of force claims.

The Plaintiff next complained about the conditions in solitary confinement, which were hot and there was a lack of air movement. The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a constitutional violation. *Id.* at 347. On the other hand, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* The "Constitution does not mandate comfortable prisons." *Id.* at 349. At the same time, in order to state a claim, a prisoner must allege facts showing that correctional officials possessed a culpable state of mind and that such officials acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991); *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991). Finally, in order to state a claim, a prisoner must allege facts showing that he received more than a *de minimis* injury due to the conditions. *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003).

With these requirements in mind, the Fifth Circuit has held that allegations of uncomfortably hot temperatures that contributed to an inmate's health problems did not support a claim of cruel and unusual punishment. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). *See also Taylor v. Woods*, 211 Fed. Appx. 240, 241 (5th Cir. 2006). The Fifth Circuit recently held that allegations of extreme heat and inadequate ventilation do not amount to an Eighth Amendment violation. *Johnson v. Texas Bd. of Criminal Justice*, No. 07-20036, 2008 WL 2337324 at *2 (5th Cir. June 5, 2008).

In the present case, the Plaintiff's allegations of heat and lack of air movement do not rise to the level of a constitutional violation. The conditions may have been hot, although that would not be totally unexpected in solitary confinement. The Plaintiff has not alleged facts showing that the conditions were cruel and unusual in light of the decisions issued by the Fifth Circuit. It is noted that the people named as defendants were Warden Blevins and Warden Sizemore. The facts attributed to Warden Blevins were that he was aware of the situation and that he had the air vents closed while a crew was painting. Warden Sizemore was not even the head warden at the time. These facts do not support an inference that they were deliberately indifferent.

The Plaintiff also testified that he named Warden Sizemore as a defendant because he is seeking injunctive relief. The problem is that the Plaintiff is no longer confined in solitary confinement. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). However, an exception exists when a dispute is "capable of repetition, yet evading review." *Davis v. Federal Election Com'n*, 128 S.Ct. 2759, 2764 (2008) (citations omitted). The "exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* When alleged, a plaintiff must be able to allege more than mere speculation. *Rocky v. King*, 900 F.2d 864, 871 (5th Cir. 1990). The Plaintiff's removal from solitary confinement and his failure to show that there is a reasonable expectation that he will be returned to solitary confinement makes his request for injunctive relief moot. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). The Plaintiff's complaints about the conditions of solitary confinement against Warden Blevins and Warden Sizemore fail to state a claim upon which relief may be granted and are

frivolous in that they lack any basis in law and fact. The conditions of confinement claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about the medical care he was provided. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A disagreement with the treatment provided by a doctor does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). A "delay in medical care can only constitute an Eighth Amendment violation if there has been

deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In the present case, the Plaintiff was confined in solitary confinement from July 17, 2006 through July 25, 2006. He complained about the heat and lack of air movement. Nurse Maxwell and P. A. Fortner ignored his complaints. He told the nurses he was having headaches and was provided Ibuprofen. He told them about his heart and eye problems, but they told him there was nothing they could do for him. Nurse Clark had him look at an eye chart on August 4, 2006. When he told her he could not see the chart with his right eye and the chart was blurry in his left eye, she did not believe him and said nothing was wrong with him. She denied his request to see P. A. Fortner. On September 22, 2006, the Plaintiff finally saw P. A. Fortner, who recognized that the situation was serious. He had the Plaintiff immediately sent to John Sealy Hospital in Galveston. The Plaintiff has alleged facts that support an inference that P. A. Fortner and Nurses Maxwell, McDaniel and Clark were deliberately indifferent to his serious medical needs. Moreover, the delays caused him substantial harm. They should respond to the deliberate indifference claims.

The Plaintiff also complained about the role of Lt. Johnson and Officer Hutchison in the investigation of his excessive use of force claims. A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because officials failed to adhere to grievance procedures. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The Plaintiff's complaints about how Lt. Johnson and Officer Hutchison conducted an investigation does not provide a basis for a potentially meritorious civil rights lawsuit. The Plaintiff's claims against them fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, the Plaintiff sued Karen Sexton, the CEO of Correctional Medical Care for UTMB, because she allowed the improper policies and procedures to persist that led to the denial of medical care. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The Plaintiff has not alleged facts showing that she personally participated in the alleged acts of misconduct. She was sued because of her supervisory role, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claims against Karen Sexton fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Karen Sexton should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the Plaintiff may proceed with his excessive use of force claims against Officer Danford Taylor and Officer Alvin Haak. It is further

**ORDERED** that the Plaintiff may proceed with his deliberate indifference to serious medical needs claims against Nurse Kelly Maxwell, P. A. David Fortner, Nurse Vernalea McDaniel and Nurse Carol Marie Clark. It is finally

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**So ORDERED and SIGNED this 5th day of August, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE